CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 15 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| CARLA M. DULANEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:09-cv-00063 |
| ) | |
| v. ) | |
| ) | |
| PACKAGING CORP. OF AMERICA, ) | MEMORANDUM OPINION |
| ) | |
| and ) | |
| ) | |
| BOBBY MILLS, ) | By: Hon. James C. Turk |
| ) | Senior United States District Judge |
| Defendants. ) | |

This case comes before the Court on Defendant Packaging Corporation of America's ("PCA") Motion for Summary Judgment (Dkt. No. 66). Plaintiff Carla M. Dulaney ("Dulaney") brought this action alleging gender discrimination and sexual harassment under Title VII of the Civil Rights Act of 1964, United States Code, Title 42, Section 2000e, *et seq.*, and Virginia common law assault and battery and intentional infliction of emotional distress. Dulaney seeks compensatory and punitive damages against Defendants PCA and Bobby Mills ("Mills") jointly and severally. This Court has jurisdiction over the Federal Title VII claim pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1343(4) and has supplemental jurisdiction over the Virginia tort claims pursuant to 28 U.S.C. § 1367(a).

Dulaney responded to PCA's Motion for Summary Judgment with a Memorandum in Opposition (Dkt. No. 82), and PCA replied (Dkt. No. 85). The Court heard oral argument on November 1, 2010, and the matter is now ripe for decision. For the reasons set forth in this

Memorandum Opinion, PCA's Motion for Summary Judgment is **GRANTED** with respect to Dulaney's Title VII claims, and Dulaney's state tort claims are **DISMISSED** without prejudice.

**I. Factual Background and Procedural History**

Dulaney began working as a Class B Glue Helper at PCA's Roanoke, Virginia plant in June 2006 as a temporary employee on the second shift. Mills offered Dulaney a full-time position in December 2006. During all relevant times, Mills was the "lead man" at PCA on the second shift.[1] Sometime after Dulaney began working at PCA, Mills allegedly told Dulaney that she had to provide sexual favors to him "to make things easy for her at work and to keep her job." Dulaney alleges that Mills repeatedly threatened her, told her she was replaceable, and that Mills assessed penalty "points" against her (that could potentially result in PCA sanctioning her) if she did not consent to sex with him. Complaint at 1–2. Dulaney states that Mills told her plainly, "Take care of me or you are fired." Dulaney Dep. at 44–45. Dulaney states that she refused Mills' advances at least ten times, and that Mills became angry and treated Dulaney and other workers "badly" when she refused him. Complaint at 2. Dulaney began to engage in oral sex with Mills around December 2006. The sex occurred in the workplace on average of once per week until September 2007. Dulaney maintains that the sex, while consensual, was coerced by Mills' harassment and was unwanted. Mills and PCA dispute these claims. Dulaney Dep. at 38–40.

Dulaney did not report Mills' alleged sexual harassment to PCA management until Wednesday, September 26, 2007, when she informed Plant Manager Don Woodward's ("Woodward") administrative assistant that Mills had been sexually harassing her for the last

---

[1] PCA describes Mills as Dulaney's co-worker, having no authority to hire, fire, or discipline Dulaney. Br. of PCA, at 1 (Dkt. 67). Dulaney disputes this characterization and describes Mills as Dulaney's "supervisor." It is not necessary to the disposition of this motion for the Court to resolve the issue of whether Mills was in fact Dulaney's supervisor.

seven months. On Friday, September 28, 2007, Dulaney met with Woodward and two other PCA management officials and asserted that Mills had sexually harassed her. Later that day, Woodward met with Mills, and Mills admitted to a consensual sexual relationship with Dulaney, but denied coercing or harassing her. Woodward sent Mills home early and instructed him to stay away from the facility. The following Monday, October 1, 2007, Mills resigned, and PCA formally terminated him on October 8. On October 1, Woodward contacted PCA's Area Human Resources Manager, Greg Bright ("Bright"), and Bright requested that Dulaney submit a written complaint. On October 3, Bright visited the Roanoke plant to interview Dulaney, Mills, and their co-workers. PCA excused Dulaney from work for the rest of the week with pay. Dulaney returned to the second shift the following week. Br. of PCA, at 8–12 (Dkt. 67). Dulaney concedes that she takes no issue with PCA's response after she complained of Mills' harassment to management. Dulaney Dep. at 164, 196.

One month later, on November 2, 2007, Dulaney told Bright that while she liked her job, she was no longer happy working at PCA, and would like to find other employment. But, Dulaney expressed that finding other employment was proving to be difficult while working full-time. Bright suggested that Dulaney and PCA could enter a severance agreement, under which Dulaney would terminate her employment at PCA in exchange for PCA paying her through the end of the year so that she might have the time to find a new job. Dulaney agreed that this arrangement would appropriately resolve the situation. On November 5, Woodward handed a draft severance agreement to Dulaney to review and advised her that she could consult an attorney if she wished. According to Dulaney, Bright told her that if she did not sign the agreement, she would be fired. *See* Dulaney Dep. at 135–52, 440.

The severance agreement provided that Dulaney's employment at PCA would be terminated as of November 2, 2007, but that she would continue to receive her weekly paycheck through December 31, 2007 unless she found another job. Further, she would continue to benefit from PCA's Employee Medical Plan and group term life insurance plan, but her dental benefits would be terminated immediately. In exchange, Dulaney was to release fully any claim she might have against PCA. The agreement included several important timing provisions; Dulaney was expressly given twenty-one days to consider the agreement (and the agreement also expressly advised her that she could consult an attorney), and Dulaney had seven days to revoke the agreement after signing. Def. Ex. 10 (Dkt. 82-1).

After the meeting, a plant manager directed Dulaney to get her personal belongings and escorted her off the premises. However, Dulaney states that nobody told her at this meeting that she was fired. Dulaney did not report to work on November 6, the day after the meeting. Later, Dulaney turned in her uniform and picked up her paycheck, and refused to speak with PCA management after Woodward asked her to speak with Bright. Dulaney indicated that she was refusing to speak with management on the advice of her attorney. Dulaney Dep. at 135–36, 146, 152. On November 7, 2007, Bright wrote a letter to Dulaney, which she admits receiving, clearly explaining that she had not been fired and that she was still welcome to work for PCA.[2] Def. Ex. 11 (Dkt. 82-1).

## II. Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine

---

[2] Bright states in the letter: "I thought our discussions on Friday, November 2, and Monday, November 5, made it clear that you had a job with PCA if you wanted it." Bright continued: "Let me be clear in stating, Carla, that your employment with PCA has not been terminated. Please call Mike Bourne or Don Woodward to arrange to return to work, or call me to continue to discuss the terms of an agreement that we would both find acceptable." Def. Ex. 11 (Dkt. 82-1).

4

issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009). Summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996).

### III. Analysis

#### A. Federal Claims

Section 703(a) of Title VII forbids

> an employer-
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] . . . sex.

42 U.S.C. § 2000e-2(a)(1) (2008).

There is no allegation here that Dulaney's direct employer, PCA, sexually harassed her. Instead, Dulaney alleges that a co-worker harassed her. In such a case, PCA can only be vicariously liable for the co-worker's harassment of Dulaney under the doctrine of respondeat superior. "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

But, subject to certain limitations, an employer may be absolved of its vicarious liability through a complete affirmative defense recognized by the Supreme Court in *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Ellerth*. As the Supreme Court explained in *Ellerth*, the defense, if its applies, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the

plaintiff failed to take advantage of any preventive or corrective opportunities provided by the employer." 524 U.S. at 765. If the record demonstrates that there is no genuine issue of material fact as to whether PCA satisfies the two elements of the *Faragher-Ellerth* defense, summary judgment is proper with regard to PCA's Title VII liability for Mills' harassment of Dulaney.

### 1. Adverse Employment Action and Retaliation

As a threshold matter, PCA may assert the *Faragher-Ellerth* affirmative defense *only* if PCA took no "tangible employment action" against Dulaney. *Faragher*, 524 U.S. at 808; *Ellerth*, 524 U.S. at 765; *Brown v. Perry*, 184 F.3d 388, 395 (4th Cir. 1999) (holding that an employer may assert the *Faragher-Ellerth* defense where there is no evidence that the plaintiff suffered a tangible employment action). "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Ellerth*, 542 U.S. at 765; *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 267 (4th Cir. 2001). Likewise, a Title VII retaliation action will not lie if PCA took no adverse employment action against Dulaney. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003)).

A survey of the relevant case law indicates that a "tangible employment action" requires "a *significant* change in employment status." *Reinhold v. Virginia*, 151 F.3d 172, 175 (4th Cir. 1999) (emphasis added); *see also Mormol v. Costco Wholesale Corp.*, 364 F.3d 54 (2d Cir. 2004); *Loudermilk v. Stillwater Milling Co.*, 551 F. Supp. 2d 1281 (N.D. Okla. 2008) (both holding that a reduction in hours was not a tangible employment action); *Hill v. Children's Village*, 196 F. Supp. 2d 389 (S.D.N.Y. 2002) (holding a warning letter was insufficient to create a tangible employment action); *Wu v. Pacifica Hotel Co.*, No. C 00-2-59 SI, 2001 U.S. Dist.

LEXIS 6048, at *11 (N.D. Cal. Apr. 25, 2001) (holding a disciplinary notice is not a tangible employment action).

Dulaney's argument that she suffered a tangible employment action revolves around three incidents. First, Mills allegedly sent Dulaney home "with points" when she refused his sexual advances. Second, a PCA manager allegedly directed Dulaney to remove all her personal belongings and then escorted her off the premises after the November 5, 2007 meeting between Dulaney and PCA management about the severance agreement. Third, an internal PCA memorandum drafted the same day as the severance agreement meeting labeled Dulaney's employment status as "terminated." Def. Ex. 7 (Dkt. 82-1).

Mills allegedly sending Dulaney home "with points" when she refused his advances does not constitute a tangible employment action by PCA. Dulaney's pay was never diminished by these quasi-disciplinary events, and she never accumulated enough points for so much as a verbal warning. Without addressing the propriety of Mills' actions, these incidents did not meaningfully impact Dulaney's employment status at PCA.

Likewise, neither of the November 5 events connected to the severance agreement conference constitutes a tangible employment action. The language in the severance agreement itself makes it clear[3] that Dulaney had not been fired. Page 4, Paragraph 14 of the agreement reads, "The Employee acknowledges that the Company advised him or her in writing to consult with an attorney before executing this Agreement, [and] that he or she was given a period of twenty-one (21) days within which to review this Agreement . . . ." Def. Ex. 11 (Dkt. 82-1). The agreement thus explicitly provided for a twenty-one day consideration period during which Dulaney's employment would not be terminated by PCA.

---

[3] While the "legalese" of the severance agreement may not have been clear to Dulaney herself, it would have been abundantly clear to an attorney, which PCA advised she could have consulted before signing the agreement.

Further, the internal memorandum listing Dulaney's employment status as "terminated" does not constitute a tangible employment action because the memorandum indicates that that employment status was contingent on Dulaney signing the severance agreement, which she did not. The language of the memorandum does not support a reasonable inference that Dulaney's employment had been terminated in the absence of her signature on the severance agreement.

Even if it were reasonable for Dulaney to get the impression on November 5 that she had been fired, that impression was quelled by PCA's letter explicitly stating that Dulaney *had not* been fired and, in fact, still had her position at PCA if she so desired. The letter plainly stated, "[Y]our employment with PCA has not been terminated." In light of these facts, there is no genuine issue of material fact as to whether Dulaney suffered a "tangible employment action" by PCA. Accordingly, PCA is entitled to assert the *Faragher-Ellerth* affirmative defense, and is also entitled to summary judgment on Dulaney's Title VII retaliation claim.

### 2. Reasonable Care to Prevent and Correct Harassment

The *Faragher-Ellerth* defense requires PCA to have exercised reasonable care to prevent and promptly correct any sexually harassing behavior. *Matvia*, 259 F. 3d at 266–67 (citing *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807). In the Fourth Circuit, an employer's distribution of an anti-harassment policy provides "compelling proof that the [employer] exercised reasonable care in preventing and promptly correcting harassment." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (citing *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998)). A plaintiff can rebut this presumption only by demonstrating "evidence showing that the employer implemented the policy in bad faith or was deficient in enforcing the policy." *Matvia*, 259 F. 3d at 268; *Caldwell v. Johnson*, 289 Fed. Appx. 579, 586 (4th Cir. 2008) (finding that an employee had failed to prove that the employer was deficient in

enforcing its harassment policy when the employee effectively used the policy to dispose of the harassing situation and the "policy provided employees with clear directions for how to make complaints").

There is no dispute in this case that PCA did have an anti-harassment policy in place at the time of Dulaney's alleged harassment. There is also no dispute that Dulaney received a copy of the policy and signed a receipt acknowledging that she had received it. Dulaney Dep. at 55–56; Def. Exs. 4–5. PCA also provided sexual harassment training to its employees, Bright Dep. at 19 (Dkt. 67-2), and provided clear instructions for employees to report sexual harassment in the policy. Plaintiff has not demonstrated that PCA implemented its harassment policy in bad faith or was deficient in enforcing the policy, and therefore there is no genuine issue of material fact as to whether PCA exercised reasonable care in preventing the allegedly harassing behavior.

Generally, an employer will be deemed to have exercised reasonable care to correct sexually harassing behavior "when an employer's remedial response results in the cessation of the complained conduct." *Howard v. Winter*, 446 F.3d 559, 571 (4th Cir. 2006). Dulaney readily admits that after she utilized the procedure specified in PCA's sexual harassment policy, PCA management took swift action, ensuring that Mills had no further contact with Dulaney in the workplace. In fact, the day that Dulaney discussed the matter with PCA management was the last day that Mills ever worked at the PCA plant. Accordingly, there is no genuine issue of material fact as to whether PCA exercised reasonable care in correcting the allegedly harassing behavior.

### 3. Failure to Take Advantage of Preventative Opportunities

A successful *Faragher-Ellerth* defense also requires that the plaintiff employee have unreasonably failed to take advantage of any preventative or corrective opportunities proved by

9

the employer. *Ellerth*, 524 U.S. at 756; *Faragher*, 524 U.S. at 807; *Matvia*, 259 F. 3d at 266–67. It has generally been held that when an employee fails to follow the clear steps of an employer's readily accessible sexual harassment policy to report the alleged harassment, summary judgment is proper in favor of the employer. "[A]ny evidence that the plaintiff failed to utilize the company's complaint procedure 'will normally suffice to satisfy [the employer's] burden." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001) (quoting *Lissau v. So. Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998); *see Talamantes v. Berkeley County School Dist.*, 340 F. Supp. 2d 684, 698 (D.S.C. 2004); *Collins v. Chemical Coatings, Inc.*, No. 5:07-cv-116, 2010 WL 1404619. at *6 (W.D.N.C. Mar. 31, 2010); *Bush v. Potter*, No. AW-06-959, 2009 WL 5177286, at *7 (D. Md. Dec. 21, 2009). "The law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Brown v. Perry*, 184 F.3d 388, 397 (4th Cir. 1999). PCA's policy was explicitly clear that any sexual harassment complaints should be made to the Facility Manager or Human Resources. Mills allegedly began harassing Dulaney in December 2006, but she did not complain to the Facility Manager or Human Resources until September 26, 2007. Because Dulaney did not timely utilize PCA's complaint procedure, PCA's liability is presumptively foreclosed.

To rebut this conclusion, Dulaney argues that she did in fact tell other employees, including a supervisor at the plant. Dulaney asserts that the harassment was common knowledge in the plant. But, Dulaney did not complain through the proper channels according to PCA's harassment policy. Because PCA is expected to be "reasonable, not clairvoyant or omnipotent," widespread gossip is not an effective substitute for following established protocol. *Brown*, 184 F.3d at 397; *see also, Lauderdale v. Texas Dep't of Criminal Justice, Inst'l. Div.*, 512 F. 3d 157,

164 (5th Cir. 2007) (holding that it was unreasonable for the employee "not to pursue any other avenue available under [the employer's] policy after [her supervisor[ explicitly indicated his unwillingness to act on her complaint" where the policy offered clear avenues for reporting harassment; *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 412–13 (5th Cir. 2002) (holding it unreasonable for the plaintiff not to report the harassment to another person listed in the defendant's reporting policy once her initial complaint to her supervisor was clearly ineffective).

Dulaney further argues that she did not properly report Mills' alleged harassment to PCA management for fear that she would be fired. Notwithstanding the truthfulness of that claim, the Fourth Circuit has held that "[a] generalized fear of retaliation does not excuse a failure to report sexual harassment." *Barrett*, 240F. 3d at 267. This strict requirement "serves the 'primary objective' of Title VII which 'is not to provide redress but to avoid harm.'" *Id.* (quoting *Faragher*, 524 U.S. at 806). If Dulaney were excused for failing to follow established harassment protocol because of a speculative fear of retaliation, the primary objective of Title VII would be undermined, which "could result in more, not less, sexual harassment going undetected." *Id.* Thus, Dulaney will not be excused from following PCA's established procedure for reporting sexual harassment. Because Dulaney unreasonably failed to take advantage of any preventative or corrective opportunities proved by PCA, PCA is entitled to summary judgment on the *Faragher-Ellerth* affirmative defense and cannot be liable for any Title VII harassment as a matter of law.[4]

### B. Virginia Tort Claims

Dulaney's claims for assault and battery and intentional infliction of emotional distress are Virginia state law claims that can be heard in Federal court only by the exercise of

---

[4] Because PCA cannot be liable for Mills' alleged harassment of Dulaney by operation of the *Faragher-Ellerth* defense, it is unnecessary to decide whether Mills was Dulaney's "supervisor" for purposes of Title VII liability.

supplemental jurisdiction under 28 U.S.C. § 1367. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a pendant state law claim if "the district court has dismissed all claims over which it has original jurisdiction." As explained *supra*, PCA is entitled to summary judgment as to both of Dulaney's claims arising under the laws of the United States, her Title VII harassment and retaliation claims. The Court declines to exercise supplemental jurisdiction over Dulaney's pendant state law claims, and accordingly dismisses those claims without prejudice.

### IV. Conclusion

The case law developing the *Faragher-Ellerth* affirmative defense makes it clear that liability for employee transgressions cannot be automatically imputed to an employer. In this case, PCA did everything it was obligated to do under Title VII and thus cannot be held liable for Mills' alleged sexual harassment. For the reasons stated above, it is hereby **ORDERED** that Defendant PCA's Motion for Summary Judgment (Docket No. 66) is **GRANTED** with respect to Plaintiff Dulaney's Title VII sexual harassment and retaliation claims. It is further **ORDERED** that Dulaney's state law assault and battery and intentional infliction of emotional distress claims are **DISMISSED** without prejudice. The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to counsel of record for both parties.

ENTER: This 15th day of November, 2010.

Hon. James C. Turk
Senior United States District Judge

12